NOT DESIGNATED FOR PUBLICATION

Nos. 120,261
120,262
120,263

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

GRANT MICHAEL NIXON,
*Appellant.*

MEMORANDUM OPINION

Appeal from Montgomery District Court; JEFFREY D. GOSSARD, judge. Opinion filed December 6, 2019. Affirmed in part, vacated in part, and remanded with directions.

*Steven D. Alexander*, of Kansas City, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and POWELL, JJ.

PER CURIAM: Grant Michael Nixon appeals the district court's denial of his motion to correct illegal sentence filed in three separate cases. Nixon argues mainly that he was sentenced to penalties not in effect until 2006, even though he pled guilty to crimes occurring between November 2005 and June 2009. We agree with Nixon's claim in part, so we vacate in part and remand for resentencing as more fully explained in this opinion.

1

FACTUAL AND PROCEDURAL BACKGROUND

In May and June 2009, the State charged Nixon with multiple sex crimes in three cases: 09CR229, 09CR272, and 09CR273. On September 1, 2009, the State filed amended complaints in each case. In 09CR229, the State charged Nixon with one count of aggravated criminal sodomy occurring "at some time on or after November 7, 2005 and before June 14, 2009" and two counts of indecent liberties with a child. In 09CR272, the State charged Nixon with aggravated indecent solicitation of a child occurring "on or after November 7, 2005, but prior to June 1, 2009." In 09CR273, the State charged Nixon with one count of electronic sexual solicitation of a child occurring "on or after November 7, 2005, but before June 14, 2009" and one count of sexual exploitation of a child occurring "on or after November 7, 2005, but before June 14, 2009."

On the same day, Nixon agreed to plead guilty to aggravated criminal sodomy, aggravated indecent solicitation of a child, electronic solicitation of a child, and sexual exploitation of a child in exchange for the dismissal of two counts of indecent liberties with a child in 09CR229. The plea agreement stated Nixon pled to the charges as "set forth" in the complaint and there was sufficient evidence to support the crimes charged as "set forth" in the complaint.

Also on September 1, 2009, the district court held a plea hearing. Nixon agreed to waive the preliminary hearing on each case and stated he wanted to plead guilty. The district court went through each crime and read the charge verbatim from the amended complaint—including the time period as charged—then asked Nixon if he agreed that there was sufficient evidence to sustain a guilty verdict to which Nixon responded, "Yes." The district court accepted Nixon's guilty pleas and did not indicate that it considered any other documents or evidence in determining the factual basis for the pleas.

2

On November 3, 2009, the district court sentenced Nixon in all three cases. In 09CR229—aggravated criminal sodomy—the district court sentenced Nixon to life imprisonment with a mandatory minimum of 25 years. In 09CR272—aggravated indecent solicitation of a child—the district court sentenced Nixon to 136 months' imprisonment. In 09CR273, the district court sentenced Nixon to 228 months' imprisonment for count I, electronic sexual solicitation of a child, and to life imprisonment with a mandatory minimum of 25 years for count II, sexual exploitation of a child, with the two counts running concurrent with each other. The district court ordered the sentences in all three cases to run consecutive to each other.

Nixon appealed his sentences. On October 28, 2011, the Kansas Supreme Court determined that the challenged sentences were presumptive and fell within the statutory grid block, precluding appellate review. *State v. Nixon*, No. 103,659, 2011 WL 5142964, at *1 (Kan. 2011) (unpublished opinion).

On March 23, 2018, Nixon filed a motion to correct illegal sentence in each case. The district court held a hearing on the motion on October 2, 2018. At the hearing, the State called Chief of Cherryvale Police Jimmy Holt to testify. Nixon objected to his testimony and the State explained that "[t]his evidence goes specifically to the factual basis that these proceedings are here to determine, whether or not at the time of the plea Mr. Nixon had committed the offenses before or after [July 1, 2006]." Holt then testified that he reviewed the victim interviews and victim statements from the cases and the State moved to admit the victim interviews and statements as evidence. Nixon again objected, arguing that he pled guilty to the offenses occurring between November 2005 and June 2009, not to the dates reflected in the evidence the State was trying to admit.

The district court never ruled on whether it would admit the evidence. Instead, after hearing arguments from the parties, the district court stated that it was taking judicial notice of the court files and the information in those files, including the probable

cause affidavits which reflected the exact dates of the criminal acts. The district court denied Nixon's motion, finding the court files established that the crimes occurred after July 1, 2006, and that the time period stated in the complaints must have been an error. The district court filed a journal entry denying the motion to correct illegal sentence on March 26, 2019. Nixon timely filed a notice of appeal in each case, and this court consolidated the cases on appeal.

## NIXON'S SENTENCES FOR AGGRAVATED CRIMINAL SODOMY AND SEXUAL EXPLOITATION OF A CHILD

Nixon claims his two sentences of hard 25 life imprisonment for his aggravated criminal sodomy conviction and his sexual exploitation of a child conviction were illegal. He argues that because the amended complaints, which he pled guilty to, stated that the offenses occurred on or after November 7, 2005, but before June 14, 2009, and there were two penalties in effect during that time period—due to a statutory amendment effective July 1, 2006—he should have been sentenced to the less severe penalty.

The State argues that Nixon's motion to correct illegal sentence was properly denied in each case because he is essentially challenging his convictions or arguing that the complaints were defective, both of which are impermissible arguments in a motion to correct illegal sentence. In the alternative, the State argues that the district court did not err because the probable cause affidavits show that the criminal acts occurred in 2009.

An appellate court has jurisdiction to correct an illegal sentence even if the sentence was agreed to in a plea agreement. *State v. Quested*, 302 Kan. 262, 264, 352 P.3d 553 (2015). The court may correction an illegal sentence at any time. K.S.A. 2018 Supp. 22-3504(1). An illegal sentence is one that (1) is "[i]mposed by a court without jurisdiction"; (2) "does not conform to the applicable statutory provision, either in character or punishment"; or (3) "is ambiguous with respect to the time and manner in

4

which it is to be served." K.S.A. 2018 Supp. 22-3504(3); see *State v. Hayes*, 307 Kan. 537, 538, 411 P.3d 1225 (2018). Whether a sentence is illegal is a question of law subject to de novo review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

*Nixon raises a proper illegal sentence claim.*

The State argues that Nixon fails to raise a proper illegal sentence claim. The State points to the rule that a motion to correct illegal sentence cannot be used to challenge a conviction. See *State v. Sims*, 294 Kan. 821, 825, 280 P.3d 780 (2012). The State also points out that a motion to correct illegal sentence cannot be used to challenge a defective charging document. See *State v. Robertson*, 309 Kan. 602, 605-06, 439 P.3d 898 (2019). But the cases the State relies on and the arguments raised in those cases are distinguishable from Nixon's claim.

In *Sims*, the defendant argued that his charges did not list all the required elements under the statute to charge the crime. The court determined that Sims' arguments were challenges to the validity of his conviction and were improper in a motion to correct illegal sentence. 294 Kan. at 825. In *Robertson*, the defendant argued that his convictions were improper because the charging document used an incorrect version of his name. The court determined that Robertson's argument did not entitle him to relief because he was arguing for reversal of his convictions based on a defective charging document. 309 Kan. at 605-06.

Nixon is not using his motion to correct illegal sentence to attack his convictions or to challenge the sufficiency of the complaints on the charges of aggravated criminal sodomy and sexual exploitation of a child. Nixon makes it clear that he is not trying to set aside his conviction of aggravated criminal sodomy. Instead, he is arguing that because of the time frame set forth in the complaint, he is subject to two separate penalties and under the rule of lenity, he must receive the lesser of two possible sentences. Nixon makes the

5

same argument on his sentence for sexual exploitation of a child. Thus, Nixon raises a proper illegal sentence claim because he is claiming that his sentences for aggravated criminal sodomy and sexual exploitation of a child do not "conform to the applicable statutory provision, either in character or punishment." K.S.A. 2018 Supp. 22-3504(3).

*When Nixon's sentences were imposed, it was unclear whether the criminal acts occurred before or after July 1, 2006.*

Turning to the merits of Nixon's claim, the penalties in effect at the time of the criminal acts are controlling. See *State v. Rice*, 308 Kan. 1510, 1512, 430 P.3d 430 (2018). Nixon pled to aggravated criminal sodomy and sexual exploitation of a child for acts occurring on or after November 7, 2005, but before June 14, 2009. For the time period alleged in the complaint, there were two possible penalties in effect for aggravated criminal sodomy and for sexual exploitation of a child due to statutory amendments effective July 1, 2006. Before July 1, 2006, aggravated criminal sodomy was a severity level 2 person felony. K.S.A. 21-3506(c) (Furse 1995). After July 1, 2006, aggravated criminal sodomy was an off-grid person felony. K.S.A. 2006 Supp. 21-3506(c). Similarly, before July 1, 2006, sexual exploitation of a child was a severity level 5 person felony. K.S.A. 2005 Supp. 21-3516(c). After July 1, 2006, sexual exploitation of a child was an off-grid person felony. K.S.A. 2006 Supp. 21-3516(c).

Thus, to establish which penalty should apply, we must determine whether Nixon committed the criminal acts before or after the July 1, 2006 statutory amendments. The charging documents charged Nixon with committing aggravated criminal sodomy and sexual exploitation of a child over a three-and-a-half-year time period. The written plea agreement stated that Nixon would plead guilty to the charges as "set forth" in the complaint and that there was sufficient evidence to support the crimes charged as "set forth" in the complaint. At the plea hearing, the district court read the charges verbatim from the amended complaints—including the time period charged. In sum, when Nixon

pled guilty and was sentenced for aggravated criminal sodomy and sexual exploitation of a child, there was nothing in the complaints, the plea agreement, or the plea hearing that established the specific date of each offense.

But the State argues that the lack of this finding does not matter since the probable cause affidavits in the record show that Nixon committed the acts after July 1, 2006. At the hearing on Nixon's motion to correct illegal sentence, the district court agreed with the State, finding that the crimes occurred after July 1, 2006, based on the probable cause affidavits, of which it took judicial notice. Nixon challenges this finding on appeal, arguing that the State, by introducing evidence of the victims' statements and the affidavits, violated his Confrontation Clause rights and the evidence constituted hearsay.

Although the State tried to introduce evidence at the hearing on Nixon's motions through the testimony of the police chief and various victim statements, the district court never ruled on the admissibility of this evidence. Nixon objected to the evidence at the hearing and argues on appeal that introducing the evidence violated his confrontation rights and constituted hearsay. We need not resolve this issue because we find that the evidence was inadmissible for a more basic reason. By introducing the evidence of when the criminal acts were committed, the State essentially was trying to amend the charging document in each case against Nixon. But the court may only permit a complaint or information to be amended at any time *before* a verdict or finding of guilt. K.S.A. 22-3201(e). By the time Nixon filed his motions to correct illegal sentence, it was too late for the State to try to amend the time periods for the criminal acts as set forth in the charging documents. Thus, the evidence presented by the State at the hearing on Nixon's motions was inadmissible for this reason alone.

Rather than base its decision on the State's evidence offered at the hearing, the district court stated that it was taking judicial notice of its court files, including the probable cause affidavits to establish that Nixon's criminal acts were committed in 2009.

7

The State contends on appeal that even if the evidence offered at the hearing was inadmissible because it violated Nixon's confrontation rights, the error was harmless because the district court can take judicial notice of its own files.

While it is true that a court may take judicial notice of its own files, the information judicially noticed by courts relying on this rule is distinguishable from the information judicially noticed by the court in Nixon's case. See, e.g., *State v. Lowe*, 238 Kan. 755, 759, 715 P.2d 404 (1986) (taking judicial notice of its own record of the defendant's prior juvenile proceedings when determining whether the defendant could proceed under the juvenile offenders code). Here, the district court did not take judicial notice of some prior proceeding reflected in the case file. Instead, the district court took judicial notice of documents containing disputed facts that were not previously presented.

K.S.A. 60-409 addresses facts which must or may be judicially noticed and states:

"(a) Judicial notice shall be taken without request by a party, of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States, and of such specific facts and propositions of generalized knowledge as are so universally known that they cannot reasonably be the subject of dispute.

"(b) Judicial notice may be taken without request by a party, of (1) private acts and resolutions of the Congress of the United States and of the legislature of this state, and duly enacted ordinances and duly published regulations of governmental subdivisions or agencies of this state, and (2) the laws of foreign countries and (3) such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute, and (4) specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy.

"(c) Judicial notice shall be taken of each matter specified in subsection (b) of this section if a party requests it and (1) furnishes the judge sufficient information to enable him or her properly to comply with the request and (2) has given each adverse

party such notice as the judge may require to enable the adverse party to prepare to meet the request."

The only applicable provision by which the district court could take judicial notice of the information in the probable cause affidavits is under K.S.A. 60-409(b)(4), which allows the district court to take judicial notice of "specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." But the exact dates of Nixon's criminal offenses are not "generalized knowledge" subject to judicial notice. Instead, the dates are case-specific facts that the State would have had to prove if Nixon had not pled guilty to the complaint. See *State v. Maxwell*, No. 93,791, 2006 WL 619198, at *3-4 (Kan. App. 2006) (unpublished opinion) (finding it improper for the district court to take judicial notice of a witness' qualifications because the court provided "missing elements of the State's case" that the blood draw was performed by a "qualified medical technician"). Thus, we conclude the district court misapplied K.S.A. 60-409 and erred by taking judicial notice of the exact dates of the offenses as reflected in the probable cause affidavits as such facts were not generalized knowledge.

In sum, in examining a motion to correct illegal sentence, the district court is to look at the sentence when it was pronounced and apply then-existing law to determine whether the sentence is illegal. *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019). Here, when the sentence was pronounced, there was no finding that the criminal acts occurred after the July 1, 2006 statutory amendments. Thus, the district court should have determined whether the sentences were illegal when pronounced from the bench based on what Nixon pled guilty to: aggravated criminal sodomy and sexual exploitation of a child occurring on or after November 7, 2005, but before June 14, 2009.

9

*Nixon's sentences were illegal because of the uncertainty about when the acts occurred.*

Without the district court's finding that the acts occurred in 2009, Nixon's argument comes down to whether it was illegal to sentence him to the amended penalties when it was unclear whether the acts occurred before or after the statutory amendments. There are a few cases discussing this issue. First, *State v. Jackson*, 239 Kan. 463, 472, 721 P.2d 232 (1986), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), established that "[i]f the jury finds that the [criminal] act occurred during the alleged time period, and if the jury is uncertain as to whether the act was committed before or after the effective date of [an amended statute], then defendant can be convicted of the lesser offense only."

The Kansas Supreme Court cited the rule from *Jackson* and applied it to a sentencing argument in *State v. Mullins*, 267 Kan. 84, 99, 977 P.2d 931 (1999). In that case, the court found that the defendant could only be sentenced to the less severe sentence when, based on a general jury verdict on the crime as charged, it was unclear whether the act occurred before or after the amendment of a statute. 267 Kan. at 99.

More relevant here, a panel of this court cited *Mullins* and *Jackson* in a case on the application of Jessica's Law, the July 1, 2006 amendments to the sex crimes statutes, to a rape conviction based on acts that occurred "between January 1, 2006, and December 31, 2006." *State v. Shelton*, No. 108,709, 2014 WL 1508621, at *11 (Kan. App. 2014) (unpublished opinion). The panel explained that Jessica's Law imposed a mandatory minimum of 25 years for Shelton's rape conviction. 2014 WL 1508621, at *11. The panel ultimately determined that Shelton's sentence was illegal because the jury rendered a general verdict "for crimes committed in a period during which the court cannot be certain whether the acts occurred before or after Jessica's Law took effect." 2014 WL 1508621, at *11. The panel held that Shelton could only be sentenced to the less severe, pre-Jessica's Law penalties. 2014 WL 1508621, at *11.

Finally, in *State v. Carter*, No. 105,755, 2012 WL 3135839, at *6 (Kan. App. 2012) (unpublished opinion), this court applied *Jackson* to Carter's no-contest plea to aggravated indecent solicitation occurring "between January 2006 and December 2009." The question again had to deal with the application of Jessica's Law, enacted on July 1, 2006, which required lifetime postrelease supervision for sexually violent crimes. Carter argued that because he pled to a time period that included a portion that would not be subject to Jessica's Law, he should not have been sentenced to lifetime postrelease supervision. The State correctly argued that it proffered at the plea hearing that the acts occurred in 2009. But the panel found that because Carter entered a no-contest plea, he did not admit to the facts alleged in the factual basis and instead pled to the offense as charged—acts occurring "between January 2006 and December 2009." 2012 WL 3135839, at *6. Thus, the panel applied the rule set forth in *Jackson* and determined that Carter could only be sentenced to the lesser period of postrelease supervision, not the penalties enacted by Jessica's Law. 2012 WL 3135839, at *6.

Applying the rule explained in *Jackson* and *Mullins*, Nixon's sentences for aggravated criminal sodomy and sexual exploitation of a child are illegal. Nixon pled guilty to aggravated criminal sodomy and sexual exploitation of a child occurring on or after November 7, 2005, but before June 14, 2009. The exact dates of the criminal acts were never established at the time of his convictions or sentencing. Thus, it is unclear whether the acts occurred before or after the July 1, 2006 statutory amendments, so Nixon must be sentenced to the lesser, pre-amendment penalties. For that reason, Nixon's sentences in 09CR229 for aggravated criminal sodomy and count II of 09CR273 for sexual exploitation of a child are vacated and the cases are remanded for resentencing.

NIXON'S SENTENCE FOR ELECTRONIC SEXUAL SOLICITATION OF A CHILD

Nixon claims his sentence for count I in 09CR273—electronic sexual solicitation of a child—was illegal because electronic solicitation of a child was not a criminal

11

offense until July 1, 2006. Nixon again points to the language in the complaint that states the offense occurred "on or after November 7th, 2005, but before June 14, 2009." Nixon argues that because the crime did not exist for a portion of the time period set forth in the complaint, the district court lacked jurisdiction to sentence him and his sentence should be vacated. The State counters that Nixon is improperly asking that his conviction be reversed based on a defective complaint and that a motion to correct illegal sentence is not the proper vehicle for Nixon to bring this claim.

This time the State is correct. Even though Nixon argues that his sentence for electronic solicitation of a child should be vacated, he is essentially complaining about possibly being convicted of a nonexistent crime. The only way that Nixon is entitled to any relief on this claim is by attacking the validity of his underlying conviction. But as the State points out, a motion to correct illegal sentence "'is not a vehicle for a collateral attack on a conviction.'" *State v. Cotton*, 306 Kan. 156, 159, 392 P.3d 116 (2017) (quoting *State v. Williams*, 283 Kan. 492, 496, 153 P.3d 520 [2007]). Thus, Nixon cannot raise this claim in a motion to correct illegal sentence.

NIXON'S SENTENCE FOR AGGRAVATED INDECENT SOLICITATION OF A CHILD

Finally, Nixon claims his sentence for aggravated indecent solicitation of a child in 09CR272 is illegal. The classification and sentence for Nixon's conviction of aggravated indecent solicitation of a child in 09CR272 did not change on July 1, 2006. Still, Nixon argues that if his case is remanded for resentencing in 09CR229 and 09CR273, then the new sentences "will obviously change his criminal history score" in 09CR272. The State argues that Nixon's criminal history score will not change unless his conviction of electronic sexual solicitation of a child in 09CR273 is set aside.

We agree with the State and find that Nixon is not entitled to relief on this claim. As explained above, Nixon should be resentenced in 09CR229 to a level 2 person felony

12

and in count II of 09CR273 to a level 5 person felony. But as we have discussed, Nixon is not entitled to have his conviction of electronic sexual solicitation of a child set aside in this proceeding, so his conviction on that charge remains a severity level 3 person felony. As a result, Nixon will still have three person felonies, giving him a criminal history score of A in 09CR272. Nixon's sentence for aggravated indecent solicitation of a child was not illegal and the district court did not err in denying his motion in 09CR272.

Affirmed in part, vacated in part, and remanded with directions.